## DOUGLAS L. DORTENZIO *v.* FREEDOM OF INFORMATION COMMISSION ET AL.
### (AC 16707)

Landau, Sullivan and Daly, Js.

Argued January 13—officially released April 14, 1998

*Janis M. Small,* town attorney, for the appellee (plaintiff).

*Barbara Housen,* commission counsel, with whom, on the brief, were *Mitchell W. Pearlman,* general counsel, and *Victor R. Perpetua,* commission counsel, for the appellee (named defendant).

*Maureen M. Murphy,* for the appellee (defendant Douglas J. Fairchild).

*Jeffrey F. Gostyla* filed a brief for the Connecticut Police Chiefs Association as amicus curiae.

### Opinion

SULLIVAN, J. The plaintiff, Douglas L. Dortenzio, chief of police for the town of Wallingford, appeals from the judgment of the trial court dismissing his appeal from the decision of the freedom of information commission. The plaintiff claims that the trial court improperly determined that a predisciplinary conference conducted by the plaintiff was a "hearing or other

proceeding" under General Statutes § 1-18a (b)[1] and, therefore, subject to the open meeting requirements of General Statutes §§ 1-21 (a)[2] and 1-21a (a).[3] We agree and reverse the judgment of the trial court.

The following facts and lengthy procedural history of this case are undisputed. The plaintiff is the chief of police of the Wallingford police department and, as such, is the head of that department. No independent police commission exists in Wallingford as exist in other Connecticut municipalities. The Wallingford charter vests in the plaintiff, as department head, responsibility for "the efficiency, discipline and good conduct of the department . . . ." The defendant commission is a Connecticut state agency empowered to investigate alleged violations by public agencies of the Freedom of Information Act (FOIA), General Statutes § 1-18a et seq. Douglas Fairchild, also a defendant in this action, is employed as a police officer for the Wallingford police department.

On July 30, 1993, the plaintiff notified Fairchild that he was to attend a predisciplinary conference on August 24, 1993, concerning his work performance. Allegations

[1] General Statutes § 1-18a provides in relevant part: "As used in this chapter, the following words and phrases shall have the following meanings, except where such terms are used in a context which clearly indicates the contrary . . .

"(b) 'Meeting' means any hearing or other proceeding of a public agency . . . to discuss or act upon a matter over which the public agency has supervision, control, jurisdiction or advisory power. 'Meeting' shall not include . . . an administrative or staff meeting of a single-member public agency . . . ."

[2] General Statutes § 1-21 (a) provides in relevant part: "The meetings of all public agencies, except executive sessions as defined in subsection (e) of section 1-18a, shall be open to the public. . . ."

[3] General Statutes § 1-21a (a) provides in relevant part: "At any meeting of a public agency which is open to the public, pursuant to the provisions of section 1-21, proceedings of such public agency may be recorded, photographed, broadcast or recorded for broadcast, subject to such rules as such public agency may have prescribed prior to such meeting . . . ."

relating to Fairchild's work performance had been investigated by Lieutenant Peter Cameron, Fairchild's supervisor. Cameron reported the results of the investigation to Deputy Chief Darrell E. York, who found deficiencies in Fairchild's work performance and referred the matter to the plaintiff with a recommendation for disciplinary action.

By letter to the plaintiff dated August 16, 1993, Fairchild requested that the predisciplinary conference be open to the public and that it be either videotaped or audiotaped. He also requested that he be permitted to introduce evidence and present witnesses on his behalf. The plaintiff sent Fairchild a letter in response that essentially denied these requests. The letter stated that the format of the conference had been "agreed to and practiced by both the Town and Union . . . ." The conference took place on August 24, 1993. Thereafter, by letter dated September 1, 1993, the plaintiff informed Fairchild that he was to be disciplined by an unpaid suspension for three days, during which time his police powers were to be suspended and his service weapon, departmental badge and identification card surrendered.

On September 2, 1993, Fairchild filed a complaint with the commission, claiming that the plaintiff violated the FOIA when he refused to open the conference to the public and refused to permit the conference to be tape recorded. At a hearing before a commissioner on November 18, 1993, Fairchild argued that the predisciplinary conference was a "meeting" under § 1-18a (b) and, as such, it should have been open to the public pursuant to § 1-21 (a) and he should have been able to tape-record the conference pursuant to § 1-21a (a). Fairchild asserted that the conference was a meeting under § 1-18a (b) because it was a "hearing or other proceeding of a public agency . . . to discuss or act

upon a matter over which the public agency has supervision, control, jurisdiction or advisory power. . . ." General Statutes § 1-18a (b). Fairchild requested that the action taken at the August 24, 1993 conference be declared "null and void," and that future disciplinary conferences before the plaintiff be considered meetings within the purview of § 1-18a (b). See *Dortenzio* v. *Freedom of Information Commission*, 42 Conn. App. 402, 405, 679 A.2d 978 (1996).

At the hearing before the commissioner, the plaintiff claimed that the predisciplinary conference was not a meeting under § 1-18a (b). He argued that the conference fell within an exception to the definition of a meeting under the statute for "administrative or staff meeting[s] of a single-member public agency . . . ." General Statutes § 1-18a (b).

The commission adopted the final decision of the hearing commissioner, who concluded that the plaintiff violated §§ 1-21 (a) and 1-21a (a). The commission found that the predisciplinary conference constituted a "proceeding of a public agency," namely the Wallingford police department, and therefore it was within the definition of a meeting under § 1-18a (b). The commission refused to declare the August 24, 1993 meeting null and void, but ordered the plaintiff to comply with §§ 1-21 (a) and 1-21a (a) in the future. See *Dortenzio* v. *Freedom of Information Commission*, supra, 42 Conn. App. 406.

The plaintiff appealed the commission's decision to the Superior Court, which sustained the appeal. The court, *Maloney, J.*, found that the predisciplinary conference was part of the grievance procedure established by the collective bargaining agreement between the town and the police union. Id., 406. Accordingly, the court determined that the conference was not a meeting

as that term is defined in § 1-18a (b) and therefore was not subject to the requirement of § 1-21 (a) that meetings be open to the public. Id. The court also noted that predisciplinary conferences such as the one in this case could be held in private by agreement of the parties under provisions in the FOIA for "executive sessions."[4]

The commission and Fairchild appealed to this court from the decision of the trial court. We reversed the judgment of the trial court on the ground that the court improperly substituted its judgment for that of the commission. Id., 409. It was evident from the trial court's memorandum of decision that the court was persuaded by the plaintiff's argument that the conference was not a meeting pursuant to § 1-18a (b) because it fell within an exception under § 1-18a for "strategy or negotiations with respect to collective bargaining," although that issue was never raised before the commission. Id., 406. Thus, we found that the trial court "failed to confine its review of the [commission's] decision to the issues raised and the findings in the administrative record." Id., 407. Accordingly, we remanded the case with direction to the trial court to apply the proper standard of review.

On December 2, 1996, the trial court, *McWeeny, J.*, issued a memorandum of decision dismissing the plaintiff's appeal. The court determined that the predisciplinary conference was a proceeding of the police department under § 1-18a (b) and did not fall within any of the exceptions to the definition of a meeting, as claimed by the plaintiff. The court stated that the conference was a constitutionally mandated hearing under *Cleveland Board of Education* v. *Loudermill*, 470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985). It is from that decision that the plaintiff now appeals.

---

[1] See footnote 7.

We first set out our standard of review. Judicial review of an administrative agency's action is governed by the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq., and the scope of that review is limited. *Hunnihan* v. *Mattatuck Mfg. Co.*, 243 Conn. 438, 448, 705 A.2d 1012 (1997). "When reviewing the trial court's decision, we seek to determine whether it comports with the [UAPA]. . . . We look to see if the [trial] court reviewing the administrative agency acted unreasonably, illegally, or in abuse of discretion." (Internal quotation marks omitted.) *Nelseco Navigation Co.* v. *Dept. of Liquor Control*, 34 Conn. App. 352, 355, 641 A.2d 827 (1994); Practice Book § 4061, now Practice Book (1998 Rev.) § 60-5 (court may reverse or modify decision of trial court if it determines decision erroneous in law).

"The question of whether a particular statute or regulation applies to a given state of facts is a question of statutory interpretation, which, upon review under the UAPA, ordinarily presents a question of law." *Plastic Distributors, Inc.* v. *Burns*, 5 Conn. App. 219, 225, 497 A.2d 1005 (1985). "Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." (Internal quotation marks omitted.) *State Board of Labor Relations* v. *Freedom of Information Commission*, 43 Conn. App. 133, 137, 682 A.2d 1068 (1996), aff'd, 244 Conn. 487, 709 A.2d 1129 (1998). "Although the interpretation of statutes is ultimately a question of law . . . it is the well established practice of [our Supreme Court] to accord great deference to the construction given [a] statute by the agency charged with its enforcement." (Internal quotation marks omitted.) *Hunnihan* v. *Mattatuck Mfg. Co.*, supra, 243 Conn. 449. "An exception is that when a state agency's determination of a question of law has

not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference." (Internal quotation marks omitted.) Id.

With these principles in mind, we now consider whether the trial court properly dismissed the plaintiff's appeal. Specifically, we must determine whether, in light of our deference to the commission in interpreting the FOIA, the trial court properly concluded that the predisciplinary conference was a meeting under § 1-18a (b) and was, therefore, subject to the open meeting requirements of §§ 1-21 (a) and 1-21a (a).

"Section 1-21 requires that all public agency meetings, with the exception of executive sessions, be open to the public, and that such meetings be properly noticed." *Waterbury Teachers Assn.* v. *Freedom of Information Commission,* 42 Conn. App. 700, 706, 682 A.2d 125 (1996), rev'd on other grounds, 240 Conn. 835, 694 A.2d 1241 (1997). Under § 1-18a (b), a meeting is defined as "any hearing or other proceeding of a public agency . . . to discuss or act upon a matter over which the public agency has supervision, control, jurisdiction or advisory power." Section 1-18a (b), however, excludes from the definition of meeting "an administrative or staff meeting of a single-member public agency." Thus, resolution of this appeal requires us to determine whether the predisciplinary conference was a meeting under the FOIA or whether it fits within this statutory exception, as claimed by the plaintiff.

In rendering its decision, the trial court found that the predisciplinary conference afforded to Fairchild was constitutionally mandated under *Cleveland Board of Education* v. *Loudermill,* supra, 470 U.S. 532. The court apparently reasoned that because the conference met the procedural due process requirements for a hearing espoused in *Loudermill,* the conference could not be an administrative or staff meeting under § 1-18a (b).

In *Loudermill*, the United States Supreme Court considered "what pretermination process must be accorded a public employee who can be discharged only for cause." Id., 535. Loudermill, who was discharged from his position as a security guard for dishonesty in filling out an employment application, argued that his federal constitutional right to due process was violated because he was not afforded an opportunity to respond to the charges against him prior to his discharge. It was undisputed in *Loudermill* that the employee had a property right in his continued employment created by an Ohio statute that provided that classified civil service employees could not be dismissed except for cause. See *Board of Regents* v. *Roth*, 408 U.S. 564, 576–78, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972) (property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law"); *Hunt* v. *Prior*, 236 Conn. 421, 437, 673 A.2d 514 (1996) (same). Accordingly, the state could not deprive Loudermill of this property interest without due process.

The *Loudermill* court stated, "We have described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.' *Boddie* v. *Connecticut*, 401 U.S. 371, 379 [91 S. Ct. 780, 28 L. Ed. 2d 113] (1971) (emphasis in original); see *Bell* v. *Burson*, 402 U.S. 535, 542 [91 S. Ct. 1586, 29 L. Ed. 2d 90] (1971). This principle requires 'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Cleveland Board of Education* v. *Loudermill*, supra, 470 U.S. 542. The court stated further that "the pretermination hearing, though necessary, need not be elaborate. We have pointed out that [t]he formality and procedural requisites for the hearing can vary,

depending upon the importance of the interests involved and the nature of the subsequent proceedings. . . . In general, something less than a full evidentiary hearing is sufficient prior to adverse administrative action." (Citations omitted; internal quotation marks omitted.) Id., 545. The court concluded that "[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Id., 546; see *Bartlett* v. *Krause*, 209 Conn. 352, 380–81, 551 A.2d 710 (1988).

It is evident that the trial court determined that under the facts of this case, Fairchild was entitled to, and did receive, a hearing consistent with due process under *Loudermill*. It does not necessarily follow, however, that the predisciplinary conference, while procedurally sufficient under *Loudermill*, was also required to be open to the public under the FOIA. *Loudermill* does not address the public nature of a pretermination hearing. Thus, irrespective of the application of *Loudermill* to the facts of this case, the issue we must determine here is whether the predisciplinary conference was a hearing or other proceeding for purposes of the FOIA.[5]

---

[5] We note that the administrative action at issue in *Loudermill* was the termination of an employee who had a property interest in his continued employment under Ohio law and that the action at issue in this case is a disciplinary suspension without pay. We need not decide whether Fairchild had a property interest in his employment and to what extent it was affected by the suspension since Fairchild makes no federal constitutional due process claim in this appeal. See *Bartlett* v. *Krause*, supra, 209 Conn. 378 (noting difference between termination as "grave sanction of outright severance" and "temporary suspension" in assessing need for procedural safeguards guaranteed by due process); *Geren* v. *Board of Education*, 36 Conn. App. 282, 291, 650 A.2d 616 (1994), cert. denied, 232 Conn. 907, 653 A.2d 194 (1995) (liberty interest under due process clause impaired when employee suspended from employment in manner that might damage his standing in community or might impose on him stigma or disability foreclosing his freedom to take advantage of other employment opportunities); *Honis* v. *Cohen*, 18 Conn. App. 80, 84–85, 556 A.2d 1028 (1989) (personnel decisions do not constitute deprivation of property interest unless termination of employment involved).

Under the canons of statutory construction, the language of a statute will be given its common, generally understood meaning. *Furhman* v. *Freedom of Information Commission*, 243 Conn. 427, 434, 703 A.2d 624 (1997), citing General Statutes § 1-1 (a). Black's Law Dictionary defines a hearing as "[a] proceeding of relative formality (though generally less formal than a trial), generally public, with definite issues of fact or of law to be tried, in which witnesses are heard and evidence presented." Black's Law Dictionary (6th Ed. 1990). Our Supreme Court has stated that "[a] hearing can be a proceeding in the nature of a trial with the presentation of evidence, it can be merely for the purpose of presenting arguments, or, of course, it can be a combination of the two. . . . Not only does a hearing normally connote an adversarial setting, but usually it can be said that it is any *oral* proceeding before a tribunal. . . . Our cases consistently recognize the generally adversarial nature of a proceeding considered a 'hearing,' in which witnesses are heard and testimony is taken. . . . Clearly, the legislature also contemplated that, for purposes of the UAPA, a hearing would be a proceeding of this nature." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Rybinski* v. *State Employees' Retirement Commission*, 173 Conn. 462, 469–70, 378 A.2d 547 (1977).

The formalities typically associated with a hearing or proceeding were notably absent from the predisciplinary conference. No witnesses testified at the conference, and neither Fairchild nor the union officers who represented him chose to comment on the investigation and charges, although they had the opportunity to do so.[6] Our Supreme Court has "required a public hearing

---

[6] The procedure for disciplinary action against a police officer is specified in an agreement between the town of Wallingford and the local police union. Section 1 of the agreement, regarding discipline and discharge, states that "[p]rior to the issuance of discipline, the Chief of Police and/or the Director of Personnel shall hold a conference with the officer facing potential disci-

during the *evidentiary* portions of hearings held to evaluate the job performance of a public employee" in circumstances arising under the executive session provision of § 1-18a (e) (1).[7] (Emphasis added.) *Waterbury Teachers Assn.* v. *Freedom of Information Commission,* 240 Conn. 835, 844, 694 A.2d 1241 (1997), citing *Board of Police Commissioners* v. *Freedom of Information Commission,* 192 Conn. 183, 190, 470 A.2d 1209 (1984). That, however, was not the case here. The predisciplinary conference at issue here lacked the characteristic elements of a hearing for purposes of qualifying for the open meeting requirements of the FOIA.

In rendering its decision, the trial court concluded that the conference did not fit within the statutory exception to the definition of a meeting for "an administrative or staff meeting of a single-member public agency" because the conference was held for the specific purpose of effectuating discipline and not for a general administrative purpose. As argued by the plaintiff, however, the discipline and supervision of employees is an administrative function of the chief of police as conferred by the Wallingford charter. While our inquiry into the scope of a statutory exclusion under § 1-18a (b) "must commence with the recognition of the legislature's general commitment to open governmental proceedings"; *Glastonbury Education Assn.* v. *Freedom*

---

pline, at which the officer shall be provided the opportunity to be represented by the Union and to hear and respond to the charges against him. The officer and the Union shall be notified of the disposition of the Chief and/or director of Personnel within a reasonable time." Section 2 states that "[t]he UNION shall have the right to question the propriety of any such disciplinary action or discharge through the grievance procedure herein outlined, including arbitration . . . ." Thus, Fairchild was entitled to a formal hearing through the grievance process.

[7] General Statutes § 1-18a (e) provides in relevant part: " 'Executive sessions' means a meeting of a public agency at which the public is excluded for one or more of the following purposes: (1) Discussion concerning the appointment, employment, performance, evaluation, health or dismissal of a public officer or employee, provided that such individual may require that discussion be held at an open meeting . . . ."

*of Information Commission,* 234 Conn. 704, 711–12, 663 A.2d 349 (1995); the conference at issue here related to the management and administration of internal police affairs and, thus, was exempt from the requirement of public disclosure under the FOIA.

The judgment is reversed and the case is remanded with direction to render judgment sustaining the plaintiff's appeal.

In this opinion the other judges concurred.