******************************************************

The "officially released" date that appears near the be-
ginning of each opinion is the date the opinion will be pub-
lished in the Connecticut Law Journal or the date it was
released as a slip opinion. The operative date for the be-
ginning of all time periods for filing postopinion motions
and petitions for certification is the "officially released"
date appearing in the opinion.

All opinions are subject to modification and technical
correction prior to official publication in the Connecticut
Reports and Connecticut Appellate Reports. In the event of
discrepancies between the advance release version of an
opinion and the latest version appearing in the Connecticut
Law Journal and subsequently in the Connecticut Reports
or Connecticut Appellate Reports, the latest version is to
be considered authoritative.

The syllabus and procedural history accompanying the
opinion as it appears in the Connecticut Law Journal and
bound volumes of official reports are copyrighted by the
Secretary of the State, State of Connecticut, and may not
be reproduced and distributed without the express written
permission of the Commission on Official Legal Publica-
tions, Judicial Branch, State of Connecticut.

******************************************************

# TOWN OF AVON ET AL. *v.* FREEDOM OF INFORMATION COMMISSION ET AL.
## (AC 44255)

Bright, C. J., and Prescott and Vertefeuille, Js.

*Syllabus*

The defendant G appealed from the judgment of the trial court sustaining in part the administrative appeal filed by the municipal plaintiffs from the final decision of the defendant Freedom of Information Commission. The commission found that the plaintiffs violated the Freedom of Information Act (§ 1-200 et seq.) by requiring G to sign an acknowledgement form before releasing copies of public records he had requested, and ordered that the plaintiffs shall not require the signing of such a form as a condition precedent to the inspection or receipt of copies of public records. The trial court affirmed the commission's decision as to the provision of copies, but reversed the commission's order to the extent that it applied to the inspection of original public records. On G's appeal to this court, *held* that this court lacked subject matter jurisdiction over the appeal, as G was not aggrieved by the judgment of the trial court as he failed to demonstrate a specific, personal, and legal interest in the subject matter of the challenged decision; G claimed that the court abused its discretion by holding that an agency may require requestors to sign an acknowledgement form as a condition precedent to the inspection of original public records, but, based on the administrative record and the representations of the parties, it was clear the only issue decided by the commission involved the right to receive and inspect copies of public records, and the only public records sought by G in this matter were copies, such that the court's statements regarding original public records were merely dicta, and its judgment did not diminish any right that the commission's final decision afforded G.

Argued September 15, 2021—officially released January 25, 2022

*Procedural History*

Appeal from the decision of the named defendant finding the plaintiffs in violation of the Freedom of Information Act, brought to the Superior Court in the judicial district of New Britain and tried to the court, *Cordani, J.*; judgment reversing in part the decision, from which the defendant João Godoy appealed to this court. *Appeal dismissed.*

*João Godoy*, self-represented, the appellant (defendant).

*Matthew D. Reed*, commission counsel, for the appellee (named defendant).

*Michael C. Harrington*, for the appellees (plaintiffs).

*Opinion*

BRIGHT, C. J. The self-represented defendant, João Godoy, appeals from the judgment of the trial court, which he claims sustained in part the administrative appeal filed by the plaintiffs, the town of Avon (town), the Avon Police Department (department), and the Avon Police Chief, from the final decision of the defendant Freedom of Information Commission (commission). The commission found that the plaintiffs violated the Freedom of Information Act (act), General Statutes § 1-200 et seq., by requiring Godoy to sign an acknowledgment form before releasing copies of the public records he had requested and ordered that the plaintiffs shall not require the signing of such a form as a condition precedent to the inspection or receipt of copies of public records. The court affirmed the commission's decision as to the provision of *copies* but reversed the commission's order "to the extent that" it applied to the inspection of *original* public records. We conclude that, because the only public records sought by Godoy in the present case were *copies*, the court's statements regarding original public records are merely dicta, and, consequently, Godoy is not aggrieved by the judgment. Accordingly, we dismiss the appeal for lack of jurisdiction.[1]

The following undisputed facts and procedural history are relevant to our resolution of this appeal. In November, 2018, Godoy submitted three requests to the plaintiffs under the act. On November 16, 2018, he requested "copies of the police report from the investigation" into "concerns about unregistered vehicles at 11 Columbus Circle." On November 26, 2018, Godoy requested to inspect "any and all documents regarding employee [Lieutenant] Kelly [Walsh's] application for the position of police officer . . . ." Last, on November 29, 2018, Godoy requested to inspect "any and all documents regarding police matters . . . including but not limited to police reports, or audio recording[s] of matters related to residents of 3 Columbus Circle . . . ."

On November 20, 2018, the plaintiffs denied the November 16, 2018 request on the ground that the case was under investigation. On December 4, 2018, after not receiving responses to his November 26 and 29 requests, Godoy filed an appeal to the commission, alleging that the plaintiffs had violated the act by denying and failing to respond to his requests for records. In a letter dated December 5, 2018, the plaintiffs responded to Godoy's November 16 and 29 requests. The plaintiffs notified Godoy that the investigation concerning 11 Columbus Circle was an open investigation that would be closed in approximately sixty days and told him to call Lieutenant Walsh after February 5, 2019, to schedule a time to inspect those records. As to the November 29, 2018 request, the plaintiffs informed him that there were two case reports concerning 3 Colum-

bus Circle, one from 2015, which was available for inspection, and one from 2018, which remained an open investigation. As with the 11 Columbus Circle report, the plaintiffs told Godoy that the 2018 investigation would be closed in approximately sixty days and that he should call Lieutenant Walsh after February 5, 2019, to schedule a time to inspect the 2018 report.

On January 17, 2019, Godoy went to the department to inspect Lieutenant Walsh's personnel file, which he had requested on November 26, 2018. While there, Godoy signed an acknowledgment form at the department's request and inspected a redacted copy of the file. Godoy noted on the acknowledgment form that he reviewed only a few pages of the file due to the extensive redactions. On March 4, 2019, Godoy returned to the department to receive copies of the records concerning 11 Columbus Circle, which he requested on November 16, 2018. When Godoy arrived, Lieutenant John Schmalberger asked him to sign an acknowledgment form, but Godoy refused to do so. As a result, Lieutenant Schmalberger refused to release the copies to Godoy.

On March 6, 2019, the matter was heard by a hearing officer. At the hearing, Godoy testified regarding the March 4, 2019 incident at the department. He explained that "when I got to the . . . [d]epartment, they requested me to sign some kind of statement, and I refused to sign that statement, and right after I refused to sign the statement, the lieutenant who was taking care of me for the inspection then said that the [department] wasn't ready to release those documents at the time, and then I just [left] . . . . I think that . . . it is clear to persons here . . . that you cannot put conditions prior to the release of these public documents." Lieutenant Schmalberger also testified regarding his interaction with Godoy on March 4, explaining that "Godoy . . . asked if he could come view the documents . . . number 3—excuse me, number 11 Columbus. . . . I did not know if he was just going to inspect, or take a copy of, so I had prepared *copies* of the [records] for his inspection, and for him to take, if he wished to pay for them." (Emphasis added.) After the hearing, the plaintiffs submitted an affidavit from Lieutenant Schmalberger dated June 10, 2019, stating that all requested documents regarding 3 and 11 Columbus Circle had been provided to Godoy on March 22, 2019 (11 Columbus Circle), and April 18, 2019 (3 Columbus Circle).

The hearing officer issued a proposed final decision on October 10, 2019. The hearing officer concluded, in relevant part, that "there is no statutory provision within the . . . [a]ct requiring a requester to sign an acknowledgement form as a condition precedent to inspecting or receiving *copies* of public records. It is found that it was improper for the [plaintiffs] to require

[Godoy] to sign such form as a condition precedent to inspecting or receiving *copies* of the requested records. It is concluded therefore that the [plaintiffs] violated [General Statutes] §§ 1-210 (a) and 1-212 (a) by failing to provide the complainant with prompt access to all requested records pertaining to 3 Columbus Circle and 11 Columbus Circle. Nevertheless, it is found that as of April 18, 2019, all requested records regarding 3 Columbus Circle and 11 Columbus Circle . . . ha[ve] been provided to [Godoy]."[2] (Emphasis added.)

On October 10, 2019, the commission held a meeting to consider the proposed final decision pursuant to General Statutes § 4-179.[3] In their brief to the commission, the plaintiffs represented that, "[in] an effort to maintain a record of what the [department] provides to individuals who request *copies* of documents, the department asks the individual to sign a receipt for the documents provided. This practice ensures that there is no dispute about what documents a person was given." (Emphasis added.) At the meeting, the plaintiffs' counsel explained that the plaintiffs "had a practice of asking individuals who received documents to sign a receipt . . . so that there's no further dispute of what is being provided." The plaintiffs asserted that the commission should not deem this practice illegal or a violation of the act simply because the act does not explicitly provide for such a practice.

One of the commissioners noted that the practice of requiring requesters to sign an acknowledgment form as a condition precedent to receiving documents "has a chilling effect on getting documents" and suggested that the commission add an order to the hearing officer's report prohibiting such a practice. At the conclusion of the meeting, the commission accepted the hearing officer's findings and agreed to amend the decision to order that the plaintiffs "shall not require requesters to sign a form as a condition precedent to the receipt of public records."

The plaintiffs filed an administrative appeal in the Superior Court pursuant to General Statutes § 4-183,[4] challenging the commission's final decision. In their complaint, the plaintiffs alleged, inter alia, that the commission erred in finding that they violated the act by requiring Godoy to sign a receipt, and they requested that the trial court modify the commission's decision by holding that the "plaintiffs did not violate [the] act by requiring [Godoy] sign a receipt for the documents being provided to him." The plaintiffs claimed that "Godoy had previously signed for documents he had requested from the department, but refused to do so when asked to do so with respect to the 11 Columbus Circle documents. As such, the documents were not provided to him at that time."

Godoy did not participate in the appeal in the trial court, but the commission filed an answer and a brief

in opposition to the plaintiffs' appeal. In its brief, the commission argued that "[t]he plaintiffs' policy requiring a requestor to sign an acknowledgment as a condition to the receipt of public records is a clear example of a rule that is prohibited under [the act]. [Godoy's] rights under the . . . act were diminished when the plaintiffs refused to release public records solely because Godoy did not provide his signature on an acknowledgment form." Notably, in their briefs to the court, neither the plaintiffs nor the commission raised an argument regarding access to original public records.

On August 6, 2020, after a hearing, the court issued a memorandum of decision sustaining in part the plaintiffs' appeal. The court noted that "Godoy requested copies of the records concerning 11 Columbus Circle but only to inspect the records concerning Lieutenant Walsh and 3 Columbus Circle. . . . The plaintiffs here required Godoy to sign a receipt both for the inspection of records and for the receipt of copies thereof." (Citation omitted.) The court held that "the commission's order as it applies to prohibiting the signing of a receipt as a precondition to receiving copies is appropriate, however to the extent that the commission's order prohibits the signing of a receipt as a precondition to the inspection of original public records, the court finds that the order was clear error."

On August 18, 2020, Godoy filed a motion for reconsideration, claiming that the court's decision regarding the inspection of original records conflicts with the act. In the motion, Godoy noted that there was no concern regarding the safeguarding of public records in the present case, noting that "the chances that Godoy was walking away alive carrying stolen redacted COPIES of public documents worth about twenty bucks without paying, or even destroying, losing, or misplacing said copies were simply: NONEXISTENT. However, when Godoy refused to sign a 'simple receipt,' the plaintiffs refused to allow Godoy to have access to redacted COPIES of public documents . . . ." (Emphasis in original.) The court denied the motion, and Godoy filed the present appeal.

On appeal, Godoy claims that the court abused its discretion by holding that an agency may require requestors to sign an acknowledgment form as a condition precedent to the inspection of original public records. In his principal brief, Godoy represented that he went to the department on January 17, 2019, to inspect copies of Lieutenant Walsh's personnel file and signed an acknowledgment form. He emphasized that the department provided him "an opportunity to inspect not the original, but redacted **copies** of said public documents." (Emphasis in original.) Godoy also stated that, on March 4, 2019, he "went to the [department] . . . not to inspect, but to receive **copies** of public records regarding 11 Columbus Circle . . . ."[5] (Empha-

sis in original.)

Notably, at oral argument before this court, the parties appeared to agree that the issue before the commission involved only the right to obtain copies of public records. Indeed, counsel for the commission argued to this court that the commission's order related to copies of public records only and that the issue regarding the right to inspect original public records never was presented to or considered by the commission. When this court asked Godoy if he wanted to respond to the arguments of the plaintiffs and the commission, he stated that he had nothing to add.

Given the representations of the parties at oral argument, we ordered the parties to file supplemental briefs addressing whether this appeal should be dismissed for lack of aggrievement in light of Godoy's statement in his principal brief that he was seeking only copies of public records when he refused to sign an acknowledgment form, and because the court affirmed the commission's order prohibiting the plaintiffs from requiring requestors to sign a receipt before releasing copies of requested documents.

We begin with the relevant legal principles regarding standing and aggrievement. In an administrative appeal, "[a]n aggrieved party may obtain a review of any final judgment of the Superior Court . . . ." General Statutes § 4-184; see also *In re Allison G.*, 276 Conn. 146, 157, 883 A.2d 1226 (2005) ("a requisite element of appealability is that the party claiming error be aggrieved by the decision of the trial court" (internal quotation marks omitted)).

"Aggrievement, in essence, is appellate standing. . . . It is axiomatic that aggrievement is a basic requirement of standing, just as standing is a fundamental requirement of jurisdiction. . . . There are two general types of aggrievement, namely, classical and statutory; either type will establish standing, and each has its own unique features. . . . The test for determining [classical] aggrievement encompasses a well settled twofold determination: first, the party claiming aggrievement must demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest shared by the community as a whole; second, the party claiming aggrievement must establish that this specific personal and legal interest has been specially and injuriously affected by the decision." (Citations omitted; internal quotation marks omitted.) *In re Ava W.*, 336 Conn. 545, 554–55, 248 A.3d 675 (2020).

"Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Internal quotation marks omitted.) *Wilcox* v. *Webster Ins., Inc.*, 294 Conn. 206, 215, 982 A.2d 1053 (2009).

In his supplemental brief, Godoy claims that his "specific, personal and legal interest in the subject matter of the [court's] decision is related to his own interest in obtaining <u>unconditional</u> access to 'public documents,' as demanding Godoy . . . sign a receipt as a condition precedent to the release of 'public documents' diminished and curtailed Godoy's rights under the [act]." (Emphasis in original.) He further argues that he is aggrieved because the court "formulated a rule that encompassed [fewer] rights than what the . . . [commission's] final decision granted, specially and injuriously affecting Godoy's interest in obtaining <u>unconditional</u> access to 'public documents.'" (Emphasis in original.) The plaintiffs also claim that Godoy is aggrieved, arguing that, because "the trial court's decision will impact future requests to inspect documents, [Godoy] was aggrieved for purposes of his appeal."

The commission, however, argues that, "[w]hile one could argue that the language of the trial court could possibly diminish or curtail rights granted under the act in the future, such speculation is not enough to constitute aggrievement. . . . Since the commission's order did not specifically address the signing of a receipt as a precondition to the inspection of original records, the court's order does not have a bearing on [Godoy's] rights in this regard. Should such a situation . . . occur in the future, the requesting party will be free to appeal that action to the commission. The commission will then have the opportunity to hear testimony and accept evidence on the record with regard to the inspection of original public records." (Citation omitted; footnote omitted; internal quotation marks omitted.) We agree with the commission.

Based on the administrative record and the representations of the parties, it is clear that the only issue decided by the commission involved the right to receive and inspect copies of public records. As previously noted, Godoy represents that he was required to sign an acknowledgment form on two different occasions. First, on January 17, 2019, when he sought "to inspect not the original, but redacted <u>copies</u>" of Lieutenant Walsh's personnel file, and then again, on March 4, 2019, when he sought "not to inspect, but to receive <u>copies</u> of public records regarding 11 Columbus Circle . . . ." (Emphasis in original.) In its final decision, the commission found "that it was improper for the [plaintiffs] to require [Godoy] to sign [an acknowledgment] form as a condition precedent to *inspecting or receiving copies of the requested records*." (Emphasis added.) Although the commission's prospective order prohibiting the plaintiffs from requiring "requesters to sign a form as a condition precedent to the receipt of public records" does not include the word "copies," the commission's finding that prompted the order explicitly referred to

"*copies of the requested records.*" (Emphasis added.) Moreover, at oral argument before this court, counsel for the commission emphasized that the commission's "order had nothing to do with the inspection of original records. . . . It was never an issue before the commission."

Because Godoy sought only copies of public records in the present case, the commission did not address the issue regarding inspection of original public records in its final decision, and, therefore, the court's discussion and conclusion regarding that issue is merely dicta. See *Laurel Beach Assn.* v. *Zoning Board of Appeals*, 66 Conn. App. 640, 648, 785 A.2d 1169 (2001) ("If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action. . . . Thus, statements by a court regarding a nonessential issue are treated as merely dicta." (Internal quotation marks omitted.)); see also *Dortenzio* v. *Freedom of Information Commission*, 42 Conn. App. 402, 409, 679 A.2d 978 (1996) (noting that review of commission's decision is limited to issues raised and findings in administrative record).

Godoy's right to inspect original public records was not at issue in the administrative appeal because he sought only copies of public records, which was the only issue addressed by the commission in its final decision. Thus, because the court affirmed the commission's order regarding the inspection or receipt of copies of public records, the court's judgment did not diminish any right that the commission's final decision afforded Godoy. See, e.g., *In re Allison G.*, supra, 276 Conn. 158 ("As a general rule, a party that prevails in the trial court is not aggrieved. . . . Moreover, [a] party cannot be aggrieved by a decision that grants the very relief sought. . . . Such a party cannot establish that a specific personal and legal interest has been specially and injuriously affected by the decision. . . . [A] prevailing party . . . can be aggrieved [however] if the relief awarded to that party falls short of the relief sought." (Citations omitted; internal quotation marks omitted.)). In fact, the language used by the court in its memorandum of decision reflects that the court was uncertain if it needed to reach any issue regarding the inspection of original documents. After reviewing the different policy concerns between producing original documents and producing copies, the court concluded that the commission's order prohibiting the signing of a receipt to receive copies was "appropriate." The court further concluded, however, that "the commission's order *to the extent* it prohibits requiring the signing of a receipt as a precondition to the inspection of original public records was clear error . . . ." (Emphasis added.) Because we conclude that the commission's order did not extend to original public records, the court's conditional holding as to such documents is

dictum. In other words, Godoy's interest in unconditional access to the public records he sought was unaffected by the court's decision because the court affirmed the commission's decision regarding the only documents at issue before the commission—copies of public records. Consequently, we conclude that Godoy has failed to demonstrate a specific, personal, and legal interest in the subject matter of the challenged decision.

Finally, the plaintiffs and Godoy suggest that Godoy is aggrieved by the judgment because, at some point in the future, he may be required to sign an acknowledgment form as a condition precedent to inspecting original public records. In light of our conclusion that the court's discussion and conclusion regarding the inspection of original public records is dicta, if the plaintiffs require Godoy to sign an acknowledgment form at some point in the future, the source of his aggrievement would not be the court's decision in this administrative appeal. Instead, Godoy would be aggrieved by having to sign such a form in connection with that possible future request. At that point, if Godoy appealed, the commission would have the opportunity to consider the distinct issue regarding the inspection of *original* public records, and, if he is aggrieved by the commission's final decision, Godoy would have standing to appeal to the Superior Court. In the present case, however, Godoy sought to inspect and receive only *copies* of the public records at issue and, therefore, he is not aggrieved by the court's dicta regarding the inspection of *original* public records. Accordingly, we lack subject matter jurisdiction over the appeal.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] In their appellees' brief, the plaintiffs claim that the court's decision should be reversed with respect to their alleged right to require that the requesting party sign a receipt as a condition precedent to the inspection or receipt of copies of public records. We decline to address this claim because the plaintiffs failed to file an appeal or a cross appeal challenging the court's judgment affirming the decision of the commission that a signature cannot be required for the inspection or receipt of copies of public records. See Practice Book § 61-8 (appellees aggrieved by judgment from which appellant has appealed may file cross appeal within ten days after filing of appeal); see also *Gagne* v. *Vaccaro*, 311 Conn. 649, 661, 90 A.3d 196 (2014) (declining to address defendant's claims attacking judgment because defendant failed to file cross appeal pursuant to Practice Book § 61-8).

[2] General Statutes § 1-210 provides in relevant part: "(a) Except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records and every person shall have the right to (1) inspect such records promptly during regular office or business hours, (2) copy such records in accordance with subsection (g) of section 1-212, or (3) receive a copy of such records in accordance with section 1-212. Any agency rule or regulation, or part thereof, that conflicts with the provisions of this subsection or diminishes or curtails in any way the rights granted by this subsection shall be void. . . ."

General Statutes § 1-212 provides in relevant part: "(a) Any person applying in writing shall receive, promptly upon request, a plain, facsimile, electronic or certified copy of any public record. The type of copy provided shall be within the discretion of the public agency, except (1) the agency shall provide a certified copy whenever requested, and (2) if the applicant

does not have access to a computer or facsimile machine, the public agency shall not send the applicant an electronic or facsimile copy. . . .”

[3] General Statutes § 4-179 provides in relevant part: “(a) When, in an agency proceeding, a majority of the members of the agency who are to render the final decision have not heard the matter or read the record, the decision, if adverse to a party, shall not be rendered until a proposed final decision is served upon the parties, and an opportunity is afforded to each party adversely affected to file exceptions and present briefs and oral argument to the members of the agency who are to render the final decision. . . .”

[4] General Statutes § 4-183 (a) provides in relevant part: “A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. . . .”

[5] Godoy’s briefs do not discuss either inspecting or receiving the records related to 3 Columbus Circle, but the hearing officer found that those records had been provided to Godoy.

———————————————